UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO ARCIGA,<br><br>Petitioner,<br><br>v.<br><br>SCOTT FRAUENHEIM, *Warden*,<br><br>Respondent. | No. 1:15-cv-01372-DAD-CDB (HC)<br><br>ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS<br><br>(Doc. No. 1) |

## BACKGROUND

Petitioner Mario Arciga is a state prisoner proceeding *pro se* and *in propria persona* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pending petition, petitioner asserts that he was denied his rights under the Fourteenth Amendment to the U.S. Constitution when he was tried and convicted of forcible rape, kidnapping to commit rape, attempted lewd act on a child, and attempted kidnapping to commit a lewd act, in the Fresno County Superior Court in 2012, upon which convictions he is currently serving an indeterminate sentence of 25 years-to-life plus 19 years in state prison. (Doc. No. 1 at 1.) Petitioner seeks federal habeas relief on the ground that the state trial court violated his due process rights when it

/////

/////

/////

1

denied his *Batson*/*Wheeler*[1] motion by finding that he had failed to make a *prima facie* showing of racial discrimination in the prosecutor's exercise of peremptory challenges—using 10 of 15 strikes (66.6%) on prospective jurors with Spanish surnames. (*Id.* at 28.)[2]

On June 15, 2022, this court conducted a *de novo* review of petitioner's *Batson* claim and concluded that petitioner had "made a *prima facie* showing of racial discrimination in the prosecutor's exercise of peremptory challenges" in satisfying "the requirements of *Batson*'s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." (Doc. No. 43 at 33) (quoting *Johnson v. California*, 545 U.S. 162, 170 (2005)). This court's June 15, 2022 order, and in particular the court's findings with regard to petitioner's showing at *Batson* step one are incorporated by reference herein.

Consistent with Ninth Circuit precedent, in its June 15, 2022 order, this court concluded that "an evidentiary hearing will be necessary in order to appropriately resolve petitioner's *Batson* claim," and scheduled a status conference with the parties to discuss the setting of an evidentiary hearing. (Doc. No. 43 at 33–34) (citing *Johnson v. Finn*, 665 F.3d 1063, 1072 (9th Cir. 2011)). The court held a status conference for this purpose on August 1, 2022. (Doc. No. 54.) At that status conference, respondent's counsel expressed the view that it was petitioner who bore the burden of production at the evidentiary hearing—a view that was not shared by the court or by counsel for petitioner. After considering supplemental briefing by the parties addressing the question of which party bears the burden at an evidentiary hearing for *Batson* step two, on October 24, 2022, the court issued an order confirming that controlling precedent makes clear that respondent bears the burden of production at *Batson* step two and denying respondent's motion

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986); *People v. Wheeler*, 22 Cal. 3d 258 (1978). *Wheeler* is considered the California procedural equivalent of *Batson*. *See Crittenden v. Ayers*, 624 F.3d 943, 951 (9th Cir. 2010). In petitioner Arciga's underlying criminal case, the state courts referred to his motion as a *Batson/Wheeler* or *Wheeler/Batson* motion. *People v. Arciga*, No. F064382, 2014 WL 1400962, at *2 (Cal. Ct. App. Apr. 11, 2014). For simplicity's sake, in this order the court refers to petitioner's motion as a *Batson* motion and his claim in that regard as a *Batson* claim.

[2] In his pending petition, petitioner also asserted two claims for federal habeas relief based on the asserted insufficiency of the evidence presented at his trial. (Doc. No. 1 at 40, 50.) The court denied habeas relief as to those claims on June 15, 2022. (Doc. No. 43 at 34.)

for reconsideration of the court's June 15, 2022 order. (Doc. No. 64.) The court also directed "respondent to first ascertain whether the prosecutor is able to recall her reasons for striking the prospective jurors at issue in this case, such that an evidentiary hearing would be productive." (*Id.* at 6.) If yes, then the parties were directed to meet and confer and propose hearing dates. (*Id.*) If no, then the parties were directed to meet and confer and file a joint status report regarding how the parties intend to proceed in this federal habeas action. (*Id.* at 7.)

On November 14, 2022, respondent filed a response to the court's October 24, 2022 order, stating that "[r]espondent's knowledge on the issue is that the prosecutor states she lacks any recollection of juror selections for this specific case, always listens to each juror without prejudice and makes a determination based on the answers, and only looked at the totality of the potential juror." (Doc. No. 65.) Respondent also filed an investigation report detailing an investigation conducted by a special agent of the California Department of Justice, Bureau of Investigation at the request of respondent's counsel, reflecting that the special agent spoke to the prosecutor of petitioner's underlying case. (Doc. No. 65-1 at 1.) As stated in that investigation report, the prosecutor also relayed to the special agent that she "did not have any recollection of juror selections for [petitioner's] case" and that her practice is to "look[] at the totality of the potential juror." (*Id.*)

As a result of the response filed by respondent, on November 16, 2022, the parties filed a stipulation acknowledging that they had met and conferred and stipulating that this case be submitted for decision on the present record because respondent has no evidence to offer at an evidentiary hearing, and thus an evidentiary hearing at *Batson* step two would not be productive. (Doc. No. 66.) Accordingly, on November 17, 2022, the court took the petition under submission for decision.

The court now resumes its analysis of petitioner's *Batson* claim.

## ANALYSIS

**A.**  ***Batson* Step Two**

With regard to *Batson*'s second step, the Supreme Court has noted that "[t]he inherent uncertainty present in inquiries of discriminatory purpose counsels against engaging in needless

3

and imperfect speculation when a direct answer can be obtained by asking a simple question." *Johnson*, 545 U.S. at 172 (citing *Paulino v. Castro*, 371 F.3d 1083, 1090 (9th. Cir. 2004) (*Paulino I*) ("[I]t does not matter that the prosecutor might have had good reasons . . . [;] [w]hat matters is the real reason they were stricken") (emphasis deleted); *Holloway v. Horn*, 355 F.3d 707, 725 (3rd Cir. 2004) (speculation "does not aid our inquiry into the reasons the prosecutor actually harbored" for a peremptory strike)). "[T]he rule in *Batson* provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it." *Miller-El v. Dretke*, 545 U.S. 231, 251–52 (2005) ("*Miller-El II*") ("[W]hen illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives. A *Batson* challenge does not call for a mere exercise in thinking up any rational basis."). Thus, at *Batson* step two, "the state must offer evidence probative of the *actual* reason that a prosecutor exercised the strike at issue. Evidence that a *good* reason for a strike existed is insufficient in itself at Step Two." *Shirley v. Yates*, 807 F.3d 1090, 1103–04 (9th Cir. 2015), *as amended* (Mar. 21, 2016). As the Ninth Circuit has explained,

> Where time has passed since the jury selection, the prosecutor may offer an explanation based on his present recollection of his reasons for striking the juror. Where [] time has passed and the prosecutor no longer has a present recollection of his or her reasons for striking the juror, the state may offer an explanation based on circumstantial evidence. *See Paulino*, 542 F.3d [692, 700 (9th Cir. 2008) ("*Paulino II*")] ("Evidence of a prosecutor's actual reasons may be direct or circumstantial, but mere speculation is insufficient."). When this occurs, we say that the state has "reconstructed" the prosecutor's reasons for striking the juror. During reconstruction, the state may rely on any relevant evidence, such as jury questionnaires, the prosecutor's notes or testimony of the prosecutor.
>
> As we explained in *Paulino II*, the court may reject a reconstructed articulation as mere "speculation" or accept it as properly based on relevant circumstantial evidence. *See id*. ("[T]he district court did not err in concluding that the speculative reasons offered by the prosecutor did not constitute circumstantial evidence of her actual reasons."). But regardless of how the state offers its race-neutral justification, it is not the task of the district court at step two to assess the truth of the explanation. That is part of the step three analysis. Nor is it the district court's role to conduct its own reconstruction, based on the circumstantial evidence, of what the prosecutor would have said. At step two, the court's role is limited

4

> to determining whether the state has met its burden of production at all.

*Crittenden v. Ayers*, 624 F.3d 943, 957–58 (9th Cir. 2010).

Here, the court has not set an evidentiary hearing because the parties have stipulated that an evidentiary hearing would not be productive in light of the prosecutor's inability to recall the jury selection in petitioner's underlying criminal case. In other words, the prosecutor is unable to testify as to her actual reasons for striking the prospective jurors in petitioner's case. Respondent therefore forewent the opportunity to present evidence at an evidentiary hearing, because he would not have been able to satisfy his burden of producing evidence of race-neutral justifications for the prosecutor's exercise of strikes by calling the prosecutor to testify. Notably, respondent did not proffer any other evidence, such as circumstantial evidence from the prosecutor's contemporaneous notes or juror questionnaires, to attempt to meet his burden at *Batson* step two. As a result, the record lacks any evidence of the prosecutor's actual reasons for exercising 10 of the prosecution's 15 peremptory challenges to strike prospective jurors with Spanish surnames during jury selection in petitioner's underlying criminal case. *See Williams v. Runnels*, 640 F. Supp. 2d 1203, 1218 (C.D. Cal. 2009) (concluding that the respondent had "failed to supply [the] court with any of the actual reasons behind the prosecutor's peremptory challenges" where the prosecutor "had no recollection of the voir dire, had no files or notes regarding the voir dire, and could not supply any information at a hearing in this court"). Further, respondent does not offer, and the court would not entertain, any "post-hoc speculation" regarding reasons the prosecutor might have had for striking those prospective jurors. *See Rizo v. Kernan*, No. 03-cv-822-JAK-AJW, 2016 WL 8606275, at *9 (C.D. Cal. Oct. 13, 2016), *report and recommendation adopted*, 2017 WL 1115150 (C.D. Cal. Mar. 24, 2017) (concluding that the respondent had not satisfied his burden at *Batson* step two where "the prosecutor had no independent recollection of his reason for striking" the prospective juror).

**B.     *Batson* Step Three**

In the usual case, at *Batson*'s third step, the burden shifts back to the defendant to demonstrate that the race-neutral reason given by a prosecutor was pretextual and that the

5

exercise of peremptory strikes was motivated by race.  *Purkett v. Elem*, 514 U.S. 765, 767 (1995) ("If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination."); *see also Miller-El II*, 545 U.S. at 239 ("The trial court then will have the duty to determine if the defendant has established purposeful discrimination.") (quoting *Batson*, 476 U.S. at 98).  Indeed, "[i]t is not until the third step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination."  *Purkett*, 514 U.S. at 768.  This is because "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."  *Id*.

"The state's failure to articulate the prosecutor's actual race-neutral reason for [] peremptory challenge[s] does not relieve the petitioners of the ultimate burden of proving purposeful discrimination," but the failure to do so still matters.  *Rizo*, 2016 WL 8606275 at *10 (citing *Shirley*, 807 F.3d 1105).  As the Ninth Circuit has explained in this regard:

> Where the state fails to meet its burden of production, the evidence before the district court at step three—the prima facie showing plus the evidence of discrimination drawn from the state's failure to produce a reason—will establish purposeful discrimination by a preponderance of the evidence in most cases.  Indeed, in such cases, there is no race-neutral evidence to weigh.

*Paulino II*, 542 F.3d at 703.  "[W]hen the state fails to meet its Step Two burden of production, . . . the defendant will prevail at Step Three of his *Batson* challenge in almost all such cases." *Shirley*, 807 F.3d 1105.

This is one such case.  Respondent has not produced any evidence for the court to weigh at step three of the *Batson* inquiry.  As explained thoroughly in this court's June 15, 2022 order, petitioner Arciga made a strong "*prima facie* showing of racial discrimination in the prosecutor's use of peremptory strikes at his trial because there is a statistical disparity significant enough—10 of 15 strikes (66.6%)—that it alone raises an inference of bias, and that inference is not dispelled by consideration of the totality of the circumstances."  (Doc. No. 43 at 16.)  Indeed, as this court has previously observed, "a comparative analysis of the prospective jurors who were stricken by

6

the prosecutor with the jurors who were selected to serve on the jury tends to support, rather than dispel, an inference of bias in the prosecution's exercise of peremptory challenges in this case." (*Id.* at 33.)  In addition, the Ninth Circuit has recognized that "a failure to produce competent evidence at Step Two, whether due to a failure of memory or otherwise, is affirmative evidence of discrimination." *Shirley*, 807 F.3d at 1107.  Thus, the court readily finds in this case that petitioner has satisfied his burden of persuasion to prove purposeful racial discrimination by a preponderance of the evidence.  *See Purkett*, 514 U.S. at 768.

Accordingly, petitioner Arciga is entitled to federal habeas relief and his petition will be granted.  *See Paulino II*, 542 F.3d at 703 ("In light of Paulino's strong prima facie case, and the total lack of evidence rebutting it, we conclude, as did the district court, that Paulino's habeas petition should be granted."); *Williams*, 640 F. Supp. 2d at 1221 (finding that the petitioner had "carried his ultimate burden of proving purposeful discrimination in the prosecutor's use of peremptory challenges" because of "the strength of the statistical disparity, the failure of the prosecutor to offer any rationale for the strikes, and the unpersuasiveness of the suggested non-racial rationales for the strikes under a comparative juror analysis demonstrate an improper motive for the peremptory challenges at issue").

## CONCLUSION

For the reasons explained above:

1. Petitioner Arciga's petition for writ of habeas corpus based on his *Batson* claim (Doc. No. 1) is granted; and
2. Respondent shall release petitioner Arciga from custody and all collateral consequences resulting from his 2012 conviction in the Fresno County Superior Court unless the State of California provides him with a new trial within (90) days from the date of entry of judgment in this case.

IT IS SO ORDERED.

Dated:  **November 21, 2022**

UNITED STATES DISTRICT JUDGE